UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

SET MATERIALS, INC.,
    Debtor.

CASE NO.: 3-09-bk-05426

_____/

## DISCLOSURE STATEMENT FOR THE
## DEBTOR'S PLAN OF REORGANIZATION

Dated: February 1, 2010

Walter J. Snell, Esq.
SNELL & SNELL, P.A.
436 North Peninsula Drive
Daytona Beach, Florida 32118
Attorneys for Debtor and
Debtor-in-Possession

THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION CONTAINED HEREIN IS SUBJECT TO SUPPLEMENT OR AMENDMENT.

## I. INTRODUCTION

    **Set Materials, Inc.,** ("Debtor"), as Debtor and Debtor-In-Possession herein, submits this Disclosure Statement in the above-referenced Chapter 11 case. A copy of the Debtor's Chapter 11 Plan of Reorganization (hereinafter the Plan) is attached as Exhibit "A." This Disclosure Statement is submitted pursuant to Sect. 1125(b) of Title 11 of the United States Code (hereinafter the "Bankruptcy Code") in order to provide adequate information to enable holders of claims to make an informed judgment in exercising their right to vote for acceptance or rejection of the Plan. This Disclosure Statement sets forth information regarding Debtor's pre-petition operating and financial history, significant events causing the Debtor to file this Chapter 11, and the anticipated organization and operations of the Reorganized Debtor. Lastly, this Disclosure Statement provides a summary of the classification of claims of the Debtor and the treatment of such claims under the Plan.

    After careful review of the Debtor's current business operations and prospects of ongoing business, the Debtor is confident that its business and assets have significant and greater value than would be realized in a liquidation scenario, and as a result, the recovery for creditors of the Debtor will be maximized by a reorganization of Debtor and Debtor's liabilities, as contemplated by the Plan.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT AND ANY HOLDER OF ANY CLAIM SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED DECISION ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENTCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN SHALL CONTROL.**

**NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE, WHICH ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON DEBTOR'S CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES, AND ASSUMPTIONS.**

**AS TO ANY CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER CAUSES OF ACTION OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

## II. BUSINESS DESCRIPTION AND REASONS FOR CHAPTER 11
### A. The Debtor

The Debtor is a Florida corporation formed in 1997 by Arthur "Chip" Drewry, who remains its sole stockholder and General Manager. The Debtor's principal place of business is located at 800 Hull Road, Ormond Beach, Volusia County, Florida. The Debtor is engaged in the business of construction demolition, concrete crushing and concrete recycling. Prior to the formation of Set Materials, Chip Drewry owned and operated Chips Dozier Service, Inc., a Florida corporation engaged in construction site preparation (land clearing and grading) and concrete foundations for both residential and commercial construction. In September, 1997, Chips Dozier merged with Set Materials.

In addition to the main office owned by Debtor at 800 Hull Road, Debtor owns real property at 40 Holly Street, which is located across the street from the main office and is used for vehicle and equipment storage and maintenance.

Prior to, during and following this chapter 11 proceeding, Chip Drewry shall continue to serve as General Manager, which involves oversight of the daily operations of the Debtor including sales, job bids and proposals, equipment acquisition and disposition. In addition, his son Eric Drewry, who is Vice-President, shall continue to be employed as Crushing Manager in charge of 5 different crushing plant sites, as well as coordination and scheduling of truck and equipment locations for its mobile crushing operations.

His other son, Scott Drewry, who is also a Vice-President, shall continue his employment as an Assistant Manager. In his capacity as Assistant Manager, Scott assists in the daily operations of Debtor, including job estimates and bidding, and job site supervision.

### B. Events Leading Up to the Commencement of the Chapter 11 Case

Since the merger of Debtor and Chips Dozier Service, the company grew to a peak of 125 employees, 30 pieces of heavy equipment, 35 dump trucks and trailers, and 6 concrete crushing and recycling facilities in Florida. This peak occurred during the construction boom between 2004 and 2007, and caused Debtor to incur new debt to finance the acquisition of new crushing plants, tractor trailers, water trucks and other equipment necessary to meet the increased demands. With the increase in fixed assets came a much greater monthly operating expense, which the Debtor easily maintained so long as the residential and commercial construction demands were present.

During the construction boom which occurred in Florida between 2003 and 2006, the Debtor's gross sales peaked in excess of $10 million in 2006, resulting in ordinary income in excess of $1 million. In 2007, gross sales decreased to just under $9 million, but the Debtor experienced a loss, in large part due to the higher fuel expense from higher fuel prices, as well as an increase in maintenance and repair costs necessary to sustain older equipment.

Beginning in 2008, gross sales began to decline drastically based on the down turn in both residential and commercial construction and higher overhead associated with capital expenditures for new equipment and vehicles. These events led Debtor to file this Chapter 11 petition on July 1, 2009. At the time of filing this Chapter 11, Debtor listed a total of $2,065,095 as unsecured debt in Schedule F, the largest of which was FCC Equipment (aka Caterpillar Financial Services Corp.), which is a disputed and contingent debt based on a deficiency for surrendered equipment. All other unsecured debts were listed as "disputed" in order to require

each creditor to file a proof of claim confirming the correct balance due with documentation in support thereof, and not because all such debts were in fact disputed.

## C. Cash Collateral Stipulation With FFCI

One of the Debtor's largest secured creditors is Financial Federal Credit, Inc., (FFCI), which has a lien on Debtor's cash collateral and receivables, as well as an Eagle portable screening plant with crusher and related accessories. The Debtor and FFCI entered into a Cash Collateral Stipulation, whereby Debtor acknowledged its indebtedness of $816,420.00, inclusive of accrued interest and a prepayment premium, and which was approved by Order of the Bankruptcy Court entered on September 21, 2009. Under the Cash Collateral Stipulation, the Debtor will retain the right to utilize its cash collateral to continue to fund operating expenses. In exchange, Debtor is obligated to pay FFCI a monthly payment of $13,312.00 as an adequate protection payment, which amount will continue after the effective date of the Plan until FCCI is paid in full.

## III. THE PLAN OF REORGANIZATION

### A. Brief Explanation of Chapter 11 Reorganization

Chapter 11 of the Bankruptcy Code allows a debtor to reorganize its business for its own benefit as well as that of its creditors and equity holders. Confirmation of a plan of reorganization is the principal objective of a chapter 11 proceeding whereunder its creditors and their respective claims are divided into separate classes. The plan then specifies the property and/or payments each class is to receive. If a class is to receive payment in full upon the effective date of the plan, such class or classes would be referred to as "unimpaired" and therefore deemed to have accepted the plan. Those classes whose claims are either paid in full on terms other than existed pre-petition between the particular creditor and a debtor, or paid in part, are considered "impaired" and entitled to vote on the plan.

In order for a plan of reorganization to be confirmed, each impaired class must vote to accept the plan. Acceptances must be received from the holders of claims constituting at least two-thirds in dollar amount and more than one-half in number of the allowed claims in a given impaired class that have voted to accept or reject a plan. If any class entitled to vote rejects the plan, the Bankruptcy Court may nevertheless confirm the plan if certain minimum treatment standards as set forth in the Bankruptcy Code are met with respect to that rejecting class.

### B. Classification and Treatment of Claims and Interests

The Plan divides the Claims against, and Interests in, the Debtor into separate Classes as follows:

#### Class 1: Priority Claims

Class 1 is comprised of all Allowed Priority Claims. Priority Claims are comprised generally of claims in the nature of certain unpaid employee withholding, or 940 tax claims of the Internal Revenue Service (IRS). The IRS has filed a priority claim in the amount of $45,464.56, which amount will be paid in full over a 60 month period, with payments

4

commencing 30 days after the Effective Date. This claim will be paid with interest at 5% per annum.

The only other priority creditor is Walter J. Snell, Esquire, for attorney fees in connection with this chapter 11 proceeding. The amount allowed to Walter J. Snell after notice and hearing to all interested parties, will be paid in full in three equal monthly payments commencing 30 days after confirmation.

All Class 1 Claims will be paid in full and therefore are not impaired.

### Class 2 : Secured Claim of Financial Federal Credit

The Class 2 Claim is the Financial Federal Credit, Inc., (FFCI) secured claim in the amount of $680,557.89, which amount includes a pre-payment premium of $816,420.00. The Plan treats FFCI as being a fully secured, first priority claim against all of the assets specifically listed in the security agreements in favor of FFCI, including all Debtor's accounts, inventory, and other personal property converted to cash pre-petition and post-petition (cash collateral) and an Eagle portable screening plant with crusher and related accessories. This claim shall be paid in full in monthly installments of $13,312.00, which is the amount of adequate protection payments under the Stipulation and Agreement For Use of Cash Collateral entered into between Debtor and FFCI, and approved by this Court by Order dated September 21, 2009. The Debtor will continue to pay these monthly payments after the Effective Date (with the exception of a final payment in the amount of $14,119.87) until all amounts due FFCI are paid in full. Upon full payment of this claim and otherwise compliance with the Stipulation, FFCI shall waive the prepayment premium. Until such time, FFCI shall retain its lien on Debtor's assets and cash collateral. Since FFCI is being paid in full on terms different than those originally negotiated between the parties, FFCI's Class 2 Claim is impaired.

### Class 3: Secured Claim of Sunshine State Community Bank

The Class 3 Claim is the Sunshine State Community Bank (Sunshine) secured claim in the amount of $2,404,746.20. This claim is secured by a first mortgage on Debtor's real property located at 800 Hull Road and 40 Holly Street, Ormond Beach, Florida, as well as several excavators, dump trucks, wheel loaders and bulldozers, as more specifically described in the security agreement executed by Debtor in favor of Sunshine. The Plan treats Sunshine as being a fully secured claim which will be paid in full at 7.0% per annum over 360 months. Monthly payments shall commence 30 days from the Effective Date in the amount of $15,998.86 and shall continue until this claim is paid in full. Since Sunshine is being paid in full on terms different than those originally negotiated between the parties, Sunshine's Class 3 Claim is impaired.

### Class 4: Secured Claim of Sunshine State Community Bank ($100,000.00 Note)

The Class 4 Claim is the Sunshine State Community Bank (Sunshine) secured claim in the amount of $100,598.64. This claim is secured by a Sunshine Certificate of Time Deposit as more specifically described in the security agreement executed by Debtor in favor of Sunshine. Debtor intends to surrender this collateral in full and final satisfaction of this claim. Since Sunshine shall be deemed paid in full, Sunshine's Class 4 Claim is unimpaired.

5

## Class 5: Secured Claim of Sunshine State Community Bank
## ($100,476.75 Note)

The Class 5 Claim is the Sunshine State Community Bank (Sunshine) secured claim in the amount of $102,066.68. This claim is secured by a Sunshine Certificate of Time Deposit as more specifically described in the security agreement executed by Debtor in favor of Sunshine. Debtor intends to surrender this collateral in full and final satisfaction of this claim. Since Sunshine shall be deemed paid in full, Sunshine's Class 5 Claim is unimpaired.

## Class 6 : Secured Claim of Wells Fargo Equipment Finance

The Class 6 Claim is the Wells Fargo Equipment Finance (Wells Fargo) secured claim in the amount of $215,000.00. The Plan treats Wells Fargo as being a fully secured to the extent of its lien on a Caterpillar 330DL Excavator to be retained by Debtor pursuant to the Stipulation for Relief From Stay entered into between Debtor and Wells Fargo, and approved by this Court by Order dated November 4, 2009. The secured claim of Wells Fargo in the amount of $215,000.00 shall be paid in full with interest at 6.33% per annum in monthly installments of $4,189.62, which is the amount of adequate protection payments under the Stay Relief Stipulation. The Debtor will continue to pay the monthly payments after the Effective Date until all amounts due on Wells Fargo's secured claim are paid in full. Until such time, Wells Fargo shall retain its lien on the Excavator. Since Wells Fargo is being paid in amounts and on terms different than those originally negotiated between the parties, Wells Fargo's Class 6 Claim is impaired.

Because said Stipulation provides for the voluntary surrender of several items of equipment which were part of the initial collateral for the original debt, Wells Fargo may have an unsecured claim for a deficiency, which will be treated as a Class 17 Unsecured Claim

## Class 7: Secured Claim of Caterpillar Financial Services Corporation

The Class 7 Claim is the Caterpillar Financial Services Corporation, d/b/a FCC Equipment Financing (Caterpillar) secured claim in an amount to be determined. The Plan treats Caterpillar as being a fully secured to the extent of the value of the Fairbanks HVX Scale, Pacvan and Powerscreen to be retained by Debtor pursuant to the Stipulation and Agreement Providing Adequate Protection entered into between Debtor and Caterpillar, and approved by this Court by Order dated December 8, 2009. The secured claim of Caterpillar shall be an amount either agreed upon by the parties or ordered by the Court pursuant to a Motion to Value filed, or to be filed by Debtor. The amount determined shall be paid in full with interest at 6.0% per annum in monthly installments of $6,861.46, which is the amount of adequate protection payments under the Adequate Protection Stipulation, or such other amounts as ordered by the Court. The Debtor will continue to pay the monthly payments after the Effective Date until all amounts due on Caterpillar's secured claim are paid in full. Until such time, Caterpillar shall retain its lien on the assets specified in the Stipulation. Since Caterpillar is being paid in amounts and on terms different than those originally negotiated between the parties, Caterpillar's Class 7 Claim is impaired.

Because said Stipulation provides for the voluntary surrender of several items of equipment which were part of the initial collateral for the original debt, Caterpillar may have an unsecured claim for a deficiency, which will be treated as a Class 17 Unsecured Claim.

### Class 8: Secured Claim of Ford Motor Credit Company

The Class 8 Claim is the Ford Motor Credit Company (Ford) secured claim in the amount of $11,500.00, which is the value agreed upon between the parties for the 2005 Ford Expedition. The Plan treats Ford as being a fully secured to the extent of the value of this vehicle being retained by Debtor pursuant to the Stipulation As To Adequate Protection entered into between Debtor and Ford, and approved by this Court by Order dated November 17, 2009. The secured claim of Ford in the amount of $11,500.00 shall be paid in full in monthly installments of $206.13, which is the amount of adequate protection payments under the Cash Collateral Stipulation. The Debtor will continue to pay the monthly payments after the Effective Date until all amounts due on Ford's secured claim are paid in full. Until such time, Ford shall retain its lien on the 2005 Ford Expedition. Since Ford is being paid in amounts and on terms different than those originally negotiated between the parties, Ford's Class 8 Claim is impaired.

Because said Stipulation provides for an agreed upon value which is less than the total indebtedness to Ford, Ford may have an unsecured claim for a deficiency, which will be treated as a Class 17 Unsecured Claim.

### Class 9: Secured Claim of GMAC (2007 Chevrolet K1500)

The Class 9 Claim is the GMAC secured claim in the amount of $29,000.00, which is the value agreed upon between the parties for the 2007 Chevrolet K1500. The Plan treats GMAC as being a fully secured to the extent of the value of this vehicle being retained by Debtor pursuant to the Joint Stipulation as to Adequate Protection entered into between Debtor and GMAC, and approved by this Court on January 13, 2010. The secured claim of GMAC in the amount of $29,000.00 shall be paid in full with interest at 5.25% per annum in monthly installments of $550.59, which is the amount of adequate protection payments under the Cash Collateral Stipulation. The Debtor will continue to pay the monthly payments after the Effective Date until all amounts due on GMAC's secured claim are paid in full. Until such time, GMAC shall retain its lien on the 2007 Chevrolet. Since GMAC is being paid in amounts and on terms different than those originally negotiated between the parties, GMAC's Class 9 Claim is impaired.

Because said Stipulation provides for an agreed upon value which is less than the total indebtedness to GMAC, GMAC may have an unsecured claim for a deficiency, which will be treated as a Class 17 Unsecured Claim.

### Class 10: Secured Claim of GMAC (2007 Chevrolet Silverado)

The Class 10 Claim is the GMAC secured claim in the amount of $29,925.00, which is the value agreed upon between the parties for the 2007 Chevrolet Silverado. The Plan treats GMAC as being a fully secured to the extent of the value of this vehicle being retained by Debtor pursuant to the Joint Stipulation as to Adequate Protection Cash Collateral Stipulation entered

7

into between Debtor and GMAC, and approved by this Court on January 13, 2010. The secured claim of GMAC in the amount of $29,925.00 shall be paid in full with interest at 5.25% per annum in monthly installments of $568.16, which is the amount of adequate protection payments under the Cash Collateral Stipulation. The Debtor will continue to pay the monthly payments after the Effective Date until all amounts due on GMAC's secured claim are paid in full. Until such time, GMAC shall retain its lien on the 2007 Silverado. Since GMAC is being paid in amounts and on terms different than those originally negotiated between the parties, GMAC's Class 10 Claim is impaired.

Because said Stipulation provides for an agreed upon value which is less than the total indebtedness to GMAC, GMAC may have an unsecured claim for a deficiency, which will be treated as a Class 17 Unsecured Claim.

### Class 11: Secured Claim of Riverside National Bank

The Class 11 Claim is the Riverside National Bank (Riverside) secured claim in the amount of $27,500.00, which is the value agreed upon between the parties for the 2007 Chevrolet Silverado. The Plan treats Riverside as being a fully secured to the extent of the value of this vehicle being retained by Debtor pursuant to the Stipulation for Adequate Protection entered into between Debtor and Riverside, and approved by this Court by Order of December 16, 2009. The secured claim of Riverside in the amount of $27,500.00 shall be paid in full with interest at 7.0% per annum in monthly installments of $544.53, which is the amount of adequate protection payments under the Cash Collateral Stipulation. The Debtor will continue to pay the monthly payments after the Effective Date until all amounts due on Riverside's secured claim are paid in full. Until such time, Riverside shall retain its lien on the 2007 Silverado. Since Riverside is being paid in amounts and on terms different than those originally negotiated between the parties, Riverside's Class 11 Claim is impaired.

Because said Stipulation provides for an agreed upon value which is less than the total indebtedness to Riverside, Riverside may have an unsecured claim for a deficiency, which will be treated as a Class 17 Unsecured Claim.

### Class 12: Secured Claim of Suntrust Bank

The Class 12 Claim is the Suntrust Bank (Suntrust) secured claim in the amount of $10,942.31, which is the value agreed upon between the parties for the 2005 Ford F250. The Plan treats Suntrust as being a fully secured to the extent of the value of this vehicle being retained by Debtor pursuant to the Stipulation of Adequate Protection entered into between Debtor and Suntrust. The secured claim of Suntrust in the amount of $10,942.31 shall be paid in full with interest at 5.75% per annum in monthly installments of $210.27, which is the amount of adequate protection payments under the Adequate Protection Stipulation. The Debtor will continue to pay the monthly payments after the Effective Date until all amounts due on Suntrust's secured claim are paid in full. Until such time, Suntrust shall retain its lien on the 2005 Ford. Since Suntrust is being paid in amounts and on terms different than those originally negotiated between the parties, Suntrust's Class 12 Claim is impaired.

### Class 13 : Secured Claim of County of Volusia

The Class 13 Claim is the County of Volusia Finance Department (Volusia County) secured claim in the amount of $47,297.20 for unpaid personal property taxes for year 2008. The secured claim of Volusia County in the amount of $47,297.20 shall be paid in full with interest at 6.0% per annum in monthly installments of $914.40 over a 60 month period, with payments commencing 30 days after the Effective Date. Since Volusia County is being paid on terms different than those required, Volusia County's Class 13 Claim is impaired.

### Class 14: Secured Claim of Plymouth Park Tax Service

The Class 14 Claim is the Plymouth Park Tax Services (Plymouth) secured claim in the amount of $8,487.71 for unpaid real property taxes for year 2008 on the Hull Road property. The secured claim of Plymouth in the amount of $8,487.71 shall be paid in full with interest at 6.0% per annum in monthly installments of $164.10 over a 60 month period, with payments commencing 30 days after the Effective Date. Since Plymouth is being paid on terms different than those required, Plymouth's Class 13 Claim is impaired.

### Class 15: Secured Claim of Commerce Bank, NA

The Class 15 Claim is the secured claim of Commerce Bank, NA (Commerce) based on its lien on Debtor's 2006 Contender boat, motor and trailer. Debtor intends to surrender this collateral and any deficiency balance due Commerce shall be treated as a Class 17 Unsecured Claim.

### Class 16: Secured Claim of Sterling National Bank

The Class 16 Claim is the secured claim of Sterling National Bank (Sterling) based on its lien on various equipment, including a CAT Track loader, under a lease and/or security agreement executed by Debtor. Debtor intends to surrender this collateral and any deficiency balance due Sterling shall be treated as a Class 17 Unsecured Claim.

### Class 17: Allowed Unsecured Claims

Class 17 is comprised of all Allowed Unsecured Claims, including all deficiency claims of secured creditors whose collateral has been surrendered. The Debtor estimates the total amount of Class 17 Claims shall not exceed $1 million. These Claims include the general trade and other business creditors of Debtor in the names and amounts as listed in Debtor's bankruptcy schedules, or as shown on proofs of claim filed with the Bankruptcy Court as they may be ultimately be allowed. The Plan provides that each holder of a Class 17 Claim shall receive, in full satisfaction of their Claim, a pro-rata distribution from a fixed, quarterly distribution by Debtor of $9,000.00 in cash, such funds being derived from the continued operations of Debtor. Such distributions shall commence on the first day of the first month after

the Effective Date (first payment date). Thereafter, the Debtor shall make pro-rata distributions commencing on the first day of the next calendar quarter following the first payment date, and shall continue on the first day of each calendar quarter thereafter, but no later than the 15th day of the first month of a calendar quarter, for a period of 5 years, or until 20 distributions have been made to each allowed claim. However, such distributions may only commence once all claims in this class have been allowed and there are no claim objections pending, as the final amount of allowed unsecured claims must be fixed to determine the pro-rata distribution to each holder of a Class 17 claim.

The Debtor shall establish an account for the fixed, quarterly payment to be deposited and from which pro rata distributions shall be made. Debtor may deposit funds as necessary at any time so long as the fixed, quarterly amount shall be available for timely distribution and such account may or may not be interest bearing, at the option of Debtor.

Based upon the information presently available to Debtor, as well as projections of the final amount of allowed, Class 17 Claims, Debtor projects a payment range of **10-20%** to each holder of an allowed unsecured claim over the 5 year payment period. Upon complete and final distributions hereunder to each holder of a Class 17 Claim, such distributions shall be deemed in full and final settlement of such claim, and any and all further claims or causes of action against Debtor related to such claim shall be forever released and satisfied. Class 17 claims are impaired.

### Class 18: Equity Interests

Class 18 consists of the equity holders of Set Materials, Inc. This class consists of 100% of the common stock shares which are owned by Arthur Drewry, who shall retain all such interests.

### C. Executory Contracts:

Unless otherwise assumed, Debtor rejects all executory contracts, including but not limited to that with Sterling National Bank, GMAC and Leasecorp, that currently exist and any claims resulting from such rejection shall be treated as a Class 17 Unsecured Claim.

### D. Post-Filing Corporate Structure and Means of Implementation of the Plan

The Plan contemplates that the Debtor will continue to operate the reorganized business with lower operating expenses. Since the economic downturn that began late in 2007 and the filing of this chapter 11 proceeding, Debtor has reduced its workforce by 75% to approximately 30 employees and its equipment fleet by 50%. Because of the changing market conditions, the Debtor has re-focused its greatest efforts and resources to construction demolition and concrete recycling. In 2009, Debtor recycled over 1 million tons of concrete, asphalt and steel through 6 different locations in Florida. Based on new eco-conscious trends in the construction industry, Debtor expects a steady increase in demand for such services over the next 5 years. Just as important as the recycling process itself is the recycled product, which takes several forms.

These products are sold mostly to state and local governments throughout Florida for road repairs or new road construction. With natural resources for road and highway construction becoming less available, Debtor expects a growing demand for these recycled products over the next several years with limited competition. Demolition and recycling currently account for approximately 65% of Debtor's gross revenues, with the remaining revenues generated by site work.

As part of Debtor's restructuring to meet the increased demand for demolition and recycling, Debtor has been eliminating prior to, and during this chapter 11 proceeding, unnecessary equipment and vehicles through voluntary surrender to creditors secured by such equipment and/or vehicles. To the extent of loans remaining which are secured by needed equipment, Debtor has been negotiating with such creditors for a reduced principal based on current values as well as reduced interest rates. These efforts have resulted in a reduction in monthly operating expenses as well as reduced fuel and maintenance costs for the reduced fleet of vehicles and equipment. The downside of these repossessions and modified secured loans will be a much larger amount of unsecured debt based on deficiencies than Debtor owed at the inception of this proceeding. At the time of filing this Chapter 11, Debtor listed a total of $2,065,095 as "disputed" unsecured debt in Schedule F. As of the claims deadline, proofs of unsecured claims have been filed for a total of only $564,621.75, although this amount will likely increase once deficiency claims are filed by secured creditors whose collateral has been surrendered, including the claim of FCC/Caterpillar Financial Services.

The Debtor has also focused on decreasing its monthly operating expenses by reducing payroll in order to maximize profits for distributions contemplated under the Plan, while at the same time maintaining its obligations in the ordinary course of Debtor's reorganized business. It is through Debtor's continued, restructured operations that distributions to each class shall be made.

The Debtor shall continue to be managed by Arthur Drewry, who shall also remain its President. Scott Drewry shall remain as Vice-President and Assistant Manager. Eric Drewry shall also remain as Co-Vice-President and Crushing Manager.

### E.   Exemption From Transfer Taxes

In accordance with sect. 1146 of the Bankruptcy Code, the issuance and distribution of any promissory note or other instrument under, in furtherance of, or in connection with the Confirmed plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax.

## IV. CONFIRMATION

### A.   Confirmation Hearing

Section 1128 of the Code requires the Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of, or in opposition to, the Plan. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. A time by which to file written objections to the Plan may or may not be set by the Court. If no such date is set, any

11

objection to confirmation of the Plan must be made in writing and filed with the Clerk, with a copy to Debtor's counsel, Walter J. Snell, at least 7 days prior to the Confirmation Hearing.

B. **Confirmation Standards**

For a plan of reorganization to be confirmed, the Code requires among other things that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Code, Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept a plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of claims which is impaired under the plan.

The Bankruptcy Code shall confirm a plan only if it finds that all of the requirements enumerated in Section 1129 of the Code have been met. The Debtor believes that the Plan satisfies all of the requirements for confirmation.

## V. ALTERNATIVES TO THE PLAN AND LIQUIDATION ANALYSIS

The Plan provides for the payment in full of all priority claims, expenses of administration and all Allowed Secured Claims against Debtor, excepting only the Allowed Unsecured Claims. The only alternatives to this Plan is either a sale of Debtor's business as an ongoing concern, sale of Debtor's assets or conversion of the case to one under Chapter 7 of the Bankruptcy Code. Debtor has neither attempted, marketed nor received any offers from any interested party to purchase all of Debtor's operations as an ongoing business concern and believes such opportunities would be limited based on the pending Chapter 11 proceeding and significant debt, both secured and unsecured. A more likely alternative would be for Debtor to sell all its assets, including its real property holdings, equipment and vehicles and remaining inventory of recycled products. However, based on current depressed values of real estate and flood of repossessed heavy equipment and vehicles, and the fact that all assets are encumbered either by specific, purchase-money lenders, or by the all-encompassing lien of FFCI, Debtor would not likely receive any surplus proceeds over payoff of existing liens and mortgages on such assets.

The final alternative is for Debtor to convert this case to a Chapter 7 proceeding, which is essentially a liquidation of any unencumbered assets by a court-appointed Chapter 7 trustee. This Trustee would independently seek a sale of any unencumbered estate assets, which are likely to be non-existent based on the comprehensive secured claim of FFCI, and the fact that most equipment and vehicles are pledged as collateral for the purchase money lenders of such equipment and/or vehicles. Accordingly, it is very likely that a conversion of this Chapter 11 to Chapter 7 would not yield any greater distribution to unsecured creditors than proposed in the Plan, and more likely would result in no distribution to such class of creditors. Accordingly, the Plan represents the best opportunity for the Debtor to maximize its distribution to all creditors through its continued, reorganized operations.

## VI. RECOMMENDATION AND CONCLUSION

Debtor submits that the Plan provides for the most equitable and fair distribution to its creditors, and maximizes the value of Debtor through continued operations. The Debtor has

confidence that its ongoing operations and assets have significant and greater value than would be realized in a liquidation scenario, and as a result, the recovery for creditors of the Debtor will be maximized by a reorganization of Debtor, as contemplated by the Plan. As a result, the Debtor urges all holders of claims or interests which are impaired under the Plan to vote to accept the Plan.

DATED this 1st day of February, 2010.

SET MATERIALS, INC., DEBTOR

By: _____
Arthur Drewry
Its: President

By: _____
Scott Drewry
Its: Vice-President

By: _____
Eric Drewry
Its: Vice-President

SNELL & SNELL, P.A.

By: _____
Walter J. Snell, Esq.
Florida Bar No. 729360
436 North Peninsula Drive
Daytona Beach, Florida 32118
Telephone: (386) 255-5334
Facsimile: (386) 255-5335
Attorneys for Debtor and Debtor-In-Possession